IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No. 4:19-cv-00280 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT FOR |
| | ) | FORFEITURE *IN REM* |
| APPROXIMATELY $13,036.00 IN U.S. CURRENCY, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.   NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy) and § 841(a)(1)(prohibited acts).

2. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

## II. DEFENDANT *IN REM*

3. The defendant property is generally described as approximately $13,036.00 in U.S. currency seized by law enforcement on or about March 9, 2017 from Andrew Jacob Fetters (Fetters) while staying at the Motel 6 in Altoona, Iowa. The defendant property is in the physical custody of a local law enforcement agency, working in conjunction with the U.S. Department of Justice.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. Section 1345 and over an action for forfeiture under 28 U.S.C. Section 1355(a).

5. This Court has *in rem* jurisdiction and venue over the defendant property under 28 U.S.C. Sections 1355(b) and 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this district and because the defendant property was seized from and is located in this district.

## IV. FACTS

6. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

7. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

8. Schedule I substances have a high potential for abuse, and have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of the drug under medical supervision. 21 U.S.C. § 812(b)(1)(A) - (C).

9. Schedule II substances have a high potential for abuse, and the drug or substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions. Abuse of a Schedule II controlled substance may lead to severe psychological or physical dependence 21 U.S.C. § 812(B)(2)(A) – (C).

10. Schedule II substances include methamphetamine. 21 U.S.C. § 812(b), Schedule II.

11. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance, unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

12. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

13. Fetters first began personally using methamphetamine while he was in his 20s, or approximately in the 1990s.

14. At one point, Fetters smoked and injected methamphetamine on a daily basis.

15. Fetters, at times, chose to use illegal drugs rather than spend time with his family.

16. Fetters has been terminated from employment in the past due to his use of illegal drugs.

17. While Fetters was also in his 20s, he eventually started selling methamphetamine to other people in exchange for money.

18. At no time relevant to the acts and omissions in this case was Fetters legally authorized to distribute controlled substances to other individuals, including, but not limited to, methamphetamine.

19. It is believed that, or will be after a reasonable opportunity for further investigation and discovery, evidence will show the Defendant property constituted the proceeds of a prohibited controlled substance offense or multiple such offense, or was used or intended to be used to facilitate a prohibited controlled substance offense or numerous such offenses.

20. In October 2002, Fetters pled guilty in Polk County, Iowa of possession of methamphetamine in August 2002, and was sentenced to a year imprisonment. He was paroled, absconded, and returned to parole. Fetters also possessed drug paraphernalia while committing this offense.

21. In October 2002, Fetters pled guilty in Polk County, Iowa of possession of methamphetamine in September 2002, and was sentenced to 1 year imprisonment, consecutive to his other sentence for the same crime.

22. In 2004, law enforcement found Fetters hiding in the attic at a residence they entered while responding to the odor of a methamphetamine laboratory at that location. Fetters' actions while being arrested led to convictions in Polk County, Iowa

for interference with official acts and assaulting a police officer, and he was sentenced to 2 years' imprisonment.

23. In 2005, Fetters pled guilty to possessing drug paraphernalia, namely hypodermic needles he admitted he used to inject methamphetamine.

24. In 2008, Fetters was convicted in Ogle County, Illinois of unlawful possession of cocaine, unlawful possession of cannabis with the intent to deliver, and an unlawful possession of a weapon by a felon. He was sentenced to 5 years' imprisonment. Fetters had 115.2 grams of cannabis, 19.3 grams of cocaine, drug paraphernalia, digital scales, and a firearm with a mounted red laser sight. He was paroled in 2010, but his parole was revoked for cause.

25. In 2008, Fetters obtained an addition conviction in Ogle County, Illinois for delivery of cannabis, and was sentenced to 5 years' imprisonment. He was paroled in 2010, but had his parole revoked for cause.

26. In 2013, Fetters was convicted in Polk County, Iowa of possession of methamphetamine with the intent to deliver, second or subsequent offense, and was sentenced to 45 years' imprisonment, but he was paroled in 2016, and later absconded and was rearrested. He possessed over 6 grams of methamphetamine, drug packaging, a scale, and cash.

27. Fetters was also arrested in 2000 and 2002 on state drug charges.

28. While serving the sentence imposed upon him in 2013, Fetters was an in-patient at the Bridges drug abuse program in Des Moines in 2016, and absconded, rather than completing the program.

29. Fetters had no reported formal employment between approximately 2007 and 2017.

30. On March 9, 2017, a Des Moines Police Officer received information that Fetters had an outstanding warrant for his arrest on a probation violation for escaping the Fort Des Moines Correctional facility, and was staying at the Motel 6 on Adventureland Drive, Altoona Iowa.

31. Local law enforcement had been investigating Fetters as a multi-pound methamphetamine trafficker dating back to December 2016, or shortly after he absconded.

32. In March 2017, a warrant team was formed by the Des Moines Police Department (DSMPD) to arrest Fetters at the Motel 6.

33. As the arrest was being planned by law enforcement, a photo of Fetters was passed out by members of the DSMPD to other investigators.

34. To avoid having to apprehend Fetters after a vehicle pursuit, the lead officer's plan was to identify Fetters in the parking lot and to make the arrest before Fetters could get into a vehicle.

35. On March 9, 2017, a team of DSMPD officers drove to the Altoona Motel 6 and set up surveillance in the area.

36. At approximately 0947hrs, a DSMPD officer observed Fetters walk out the south door of the Motel 6.

37. The DSMPD officer used to his radio to report he has spotted Fetters.

38. As two DSMPD officers closed in on Fetters in their unmarked police vehicle, they observed Fetters place a black duffel bag in the trunk of a black Dodge Dart.

39. A DSMPD officer identified himself to Fetters as a police officer, and ordered Fetters to the ground.

40. As Fetters complied, he said several times, "I got a gun in my waistband!"

41. Officers thereafter handcuffed Fetters.

42. As DSMPD rolled Fetters onto his right side, an officer observed a loaded pistol in a black nylon holster in Fetters' waistband.

43. The DSMPD officer safely secured the pistol, by removing the pistol and ejected the magazine, which contained cartridges.

44. The DSMPD officer then removed the nylon holster from Fetters' waist area, and observed the holster contained an extra magazine.

45. Both magazines matched the pistol and were loaded with cartridges.

46. The serial numbers on the pistol had been obliterated.

47. It is a violation of federal criminal law for a felon to knowingly possess a firearm.

48. It is a violation of federal criminal law for a person to knowingly possess a firearm with an obliterated serial number.

49. The following evidence was seized from Fetters' person:

- a Smith and Wesson SD40VE with obliterated serial number and a loaded magazine, along with its black nylon holster;

- $113 in U.S. currency from Fetters' front right jeans pocket; and
- a tied baggie with approximately 1 gram methamphetamine.

50. The following evidence was lawfully seized from Fetters' black 2015 Dodge Dart:

- $12,923 in U.S. currency from a Ninja Turtle backpack in the trunk;
- a black ski mask from Ninja Turtle backpack in trunk;
- a box of sandwich baggies from the Teenage Mutant Ninja Turtle backpack in the trunk;
- a working digital scale from the Teenage Mutant Ninja Turtle backpack in the trunk;
- Motel 6 paperwork for room 127 in a black bag in the left rear pocket of women's jeans; and
- a notebook with drug notes in the black bag.

51. Fetters was residing at the time at the Motel 6 with "BRS" who observed him the night before with a large sum of cash, namely, the money seized from him, which she disclaimed in writing.

52. While in Polk County Jail after his arrest, Fetters was recorded making a phone call to another person in which he stated he was going to have "BRS" claim the contents of the backpack, namely, the cash, ski mask, baggies, digital scale, and drug notes, so it wasn't attributable to him.

53. Fetters had the Defendant currency while he was in escape status from work-release, and he had no legitimate source of income to earn the Defendant currency that was found by law enforcement on him and in his things.

54. Digital scales are a tool of drug dealers, who use the digital scales to weigh illegal drugs they receive from others, as well as to determine the weight of illegal drugs they package and/or sell to customers.

55. Drug dealers often use baggies as containers for illegal drugs they sell to customers.

56. Drug dealer often take notes, in various forms, including on paper and in electronic forms, of their transactions with their suppliers and customers.

57. Drug dealers often possess firearms and ammunition, and other dangerous weapons, in an effort to protect themselves from harm, and to protect their illegal drugs from theft, from other people.

58. Drug dealers most often sell their illegal drugs to customers in cash, so that law enforcement will have difficulty detecting their illegal activities.

59. Drug dealers often accumulate large amount of cash from their drug sales.

60. Fetters possessed methamphetamine, digital scales, notes, a firearm and ammunition, and the Defendant currency as tools of his illegal drug-dealing.

61. During times relevant to this matter, Fetters was dealing multiple pounds/ounces of methamphetamine to multiple customers in the Des Moines metro area.

62. During times relevant to this matter, Fetters purchased his methamphetamine from one or more sources believed to be Hispanic.

63. During times relevant to this matter, Fetters charged a customer $10,000 per pound for methamphetamine.

64. During times relevant to this matter, Fetters sold multiple pounds of methamphetamine to one or more customers.

65. During times relevant to this matter, Fetters sold methamphetamine to other individuals from his mother's residence.

66. During times relevant to this matter, Fetters was acquiring as much as three (3) pounds of methamphetamine per day for two (2) weeks before being arrested, as discussed above.

67. During times relevant to this matter, Fetters was reportedly moving twenty-five (25) to fifty (50) pounds of methamphetamine per week.

68. During times relevant to this matter, Fetters illegally acquired and illegally sold thousands of dollars' worth of methamphetamine to other people.

69. Fetters derived the Defendant currency from illegal sales of controlled substances, and/or was intending to use it to illegally purchase controlled substances, in violation of Title 21, U.S.C. §§ 841 and 846.

70. On March 21, 2017, Fetters was charged in the U.S. District Court for the Southern District of Iowa for being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).

71. On April 26, 2017, Fetters pled guilty in the U.S. District Court for the Southern District of Iowa of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).

72. On September 29, 2017, Fetters was sentenced in the U.S. District Court for the Southern District of Iowa to 110 months' imprisonment for being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).

73. At sentencing, Fetters acknowledged his long-term problem with controlled substances, and asked to be recommended for the 500-hour residential drug abuse program.

## V.  CLAIM FOR RELIEF

WHEREFORE, the United States prays that the defendant property be forfeited to the United States and that it be awarded its costs and disbursements in this action and for such other and further relief as the Court deems property and just.

    Respectfully submitted,

    Marc Krickbaum
    United States Attorney

By:  /s/ Craig Peyton Gaumer
    Craig Peyton Gaumer
    Assistant United States Attorney
    U. S. Courthouse Annex, Suite 286
    110 East Court Avenue
    Des Moines, Iowa 50309
    Tel: (515) 473-9317
    Fax: (515) 473-9292
    Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Brady Carney, hereby verify and declare under penalty of perjury that I am an Officer with the City of Des Moines Police Department, and that I have read the foregoing Verified Complaint for Forfeiture *in Rem*, *United States v. Approximately $13,036.00 in U.S. Currency* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as officer with the City of Des Moines Police Department.

Dated: September 5, 2019.

_____
Officer Brady Carney
Des Moines Police Department